# United States Court of Appeals
## For the First Circuit

No. 20-1753

COMMON CAUSE RHODE ISLAND; LEAGUE OF WOMEN VOTERS OF RHODE
ISLAND; MIRANDA OAKLEY; BARBARA MONAHAN; MARY BAKER,

Plaintiffs, Appellees,

v.

NELLIE GORBEA, in her official capacity as Secretary of State of
Rhode Island; DIANE C. MEDEROS, in her official capacities as
member of the Rhode Island Board of Elections; JENNIFER L.
JOHNSON, in her official capacities as member of the Rhode
Island Board of Elections; ISADORE S. RAMOS, in his official
capacities as member of the Rhode Island Board of Elections;
LOUIS A. DIMONE, JR., in his official capacities as member of
the Rhode Island Board of Elections; WILLIAM E. WEST, in his
official capacities as member of the Rhode Island Board of
Elections; RICHARD H. PIERCE, in his official capacities as
member of the Rhode Island Board of Elections; DAVID H. SOLES,
in his official capacities as member of the Rhode Island Board
of Elections,

Defendants, Appellees,

REPUBLICAN NATIONAL COMMITTEE; REPUBLICAN PARTY OF RHODE ISLAND,

Movants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Michael Courtney Keats, with whom Christopher H. Bell, Nicholas Carre, Avani Uppalapati, Jonathan Diaz, Fried Frank Harris Shriver & Jacobson LLP, Julie A. Ebenstein, Dale E. Ho, American Civil Liberties Union Foundation, Inc., Lynette J. Labinger, American Civil Liberties Union Foundation of Rhode Island, Jonathan Diaz, Danielle Lang, Paul March Smith, and Campaign Legal Center were on brief, for appellees Common Cause Rhode Island, League of Women Voters of Rhode Island, Miranda Oakley, Barbara Monahan, and Mary Baker.
    Angel Taveras, with whom Gustavo Ribeiro, Elliot H. Scherker, and Greenberg Traurig LLP were on brief, for appellee Nellie M. Gorbea.
    Raymond A. Marcaccio, with whom Oliverio & Marcaccio LLP was on brief, for appellees Diane C. Mederos, Jennifer L. Johnson, Isadore S. Ramos, Louis A. DeSimone, Jr., William E. West, Richard H. Pierce, and David H. Sholes.
    Cameron Thomas Norris, with whom Thomas R. McCarthy, Patrick N. Strawbridge, Consovoy McCarthy PLLC, Brandon S. Bell, Fontaine Bell, Joseph S. Larisa, Jr. were on brief, for appellants Republican National Committee and Republican Party of Rhode Island.

August 7, 2020

**Per curiam**. In an action brought by Common Cause Rhode Island, the League of Women Voters of Rhode Island, and three individual Rhode Island voters against the Rhode Island Secretary of State and members of its Board of Elections, the district court denied a motion to intervene filed by the Republican National Committee and the Republican Party of Rhode Island (jointly referred to here as the "Republicans"). Following briefing and a hearing at which the court nevertheless let the Republicans participate more or less as if they had been allowed to intervene, the court entered on July 30 a consent judgment and decree. Effective for the September and November 2020 elections, the decree suspended the state's requirements that a voter using a mail ballot mark the ballot (and sign its envelope) in the presence of two witnesses or a notary; and that the witnesses or notary, in turn, sign the envelope, provide their addresses, and affirm in the space provided that "Before me . . . personally appeared the above named voter, to me known and known by me to be the person who affixed his or her signature to this ballot envelope." See R.I. Gen. Laws §§ 17-20-2.1(d)(1), 17-20-2.1(d)(4), 17-20-2.2(d)(1), 17-20-2.2(d)(4), 17-20-21 and 17-20-23(c).

The Republicans promptly appealed the denial of their motion to intervene and the entry of the consent judgment and decree. They also filed a motion to intervene to appeal and to stay the district court's judgment and decree pending a decision

on the merits of the appeal. After receiving expedited briefing and hearing oral argument on the motion to intervene and stay, we now reverse the denial of the motion to intervene for the purposes of appeal only (we otherwise refrain from deciding the full scope of intervention until we review this case on its merits). We deny the Republicans' motion to stay the judgment and decree pending the outcome of the appeal.

In reviewing a motion to stay a consent judgment and decree pending appeal, we consider the following factors: "(1) [W]hether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether [the] issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first two factors "are the most critical." Id. at 434. "It is not enough that the chance of success on the merits be better than negligible. . . . By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor." Id. at 434-35 (citations and internal quotation marks omitted).

The parties agree that, at least in the first instance, the likelihood of success turns in great part on whether enforcing the two-witness or notary requirement in the midst of the pandemic

- 4 -

is constitutional. The First and Fourteenth Amendments prohibit states from placing burdens on citizens' rights to vote that are not reasonably justified by states' "important regulatory interests." Anderson v. Celebrezze, 460 U.S. 780, 788-89 (1983); see also Burdick v. Takushi, 504 U.S. 428, 430 (1992) (ruling that Hawaii's prohibition of write-in voting did not unreasonably burden Hawaii citizens' constitutional rights). So under the Anderson-Burdick framework we weigh the "character and magnitude of the asserted injury to" the voters' rights against the "precise interests put forward by the State as justifications for the burden imposed." Anderson, 460 U.S. at 789. We note as preliminary matters first that the burdens imposed in this case may affect more fundamental rights than those at issue in Anderson and Burdick -- that is, they affect the voter's ability to actually cast a ballot, not just the procedures for getting candidates on a ballot. And second, unlike the process contemplated by the Court in Anderson, we are unable to consider the "justifications put forward by the State" here, as the "State" of Rhode Island has not objected to the consent decree in any way.

The burden imposed by these requirements in the midst of a pandemic is significant. First, many more voters are likely to want to vote without going to the polls and will thus only vote if they can vote by mail. Second, many voters may be deterred by the fear of contagion from interacting with witnesses or a notary.

- 5 -

Could a determined and resourceful voter intent on voting manage to work around these impediments?  Certainly.[1]  But it is also certain that the burdens are much more unusual and substantial than those that voters are generally expected to bear.  Taking an unusual and in fact unnecessary chance with your life is a heavy burden to bear simply to vote.

Turning to the other side of the Anderson-Burdick scales, we agree with the Republicans that, in the abstract, the broader regulatory interest -- preventing voting fraud and enhancing the perceived integrity of elections -- is substantial and important.  But the incremental interest in the specific regulation at issue (the two-witness or notary rule) is marginal at best.  Only two other states have such a rule, and only a total of twelve require even one witness.  In the current COVID-19 pandemic, Rhode Island may be the lone state where the election laws still facially require the voter to mark his or her ballot (as well as sign the envelope) before two witnesses or a notary.  Cf. Ala. Code § 17-11-10(b); N.C. Gen. Stat. Ann. § 163-231(a)(1); N.C. Session Law 2020-17 § 1.(a) (reducing North Carolina's two-witness requirement to one witness for the 2020 elections).

---

[1] For example, counsel for the Republicans suggested at argument that senior voters, facing a higher risk of COVID-19 complications, could ask food delivery drivers to act as witnesses. Of course, this suggestion would require that another witness be available simultaneously with the food delivery driver, and that the food delivery driver be able to certify the voter's identity.

Moreover, Rhode Island just successfully completed an election without the two-witness or notary requirement in which over 150,000 mail-in ballots were requested and no evidence of fraud resulted, much less material evidence of the type of fraud that could be prevented by the two-witness or notary requirement in the first place. So the state itself views the rule as -- at best -- required in only some elections, with no coherent view (that we have heard) about which elections those might be. And Rhode Island officials charged with the conduct of fair elections apparently view the regulation's possible benefits as far outweighed by its burdens in this unusual circumstance. Indeed, no Rhode Island official has stepped forward in these proceedings, even as amicus, to tout the need for the rule. This silence certainly does not mean that the rule is not current Rhode Island law. But it does fairly support the view that the rule is not of great import for any particular regulatory purpose in the eyes of Rhode Island officials and lawmakers.

The Republicans also struggle to establish any significant likelihood of irreparable harm. They claim that their candidates may be the victims of fraudulent ballots. This is surely correct as a matter of theory. But it is dubious as a matter of fact and reality. It is not as if no protections remain. Rhode Island law provides for a local board of canvassers which ensures that the signature on all mail ballot applications (which

must be signed by the voter) matches the signature on the voter's registration card. R.I. Gen. Laws. § 17-20-10. Once a voter submits their ballot, the Board of Elections "[c]ompare[s] the name, residence, and signature [on the ballot] with the name, residence, and signature on the ballot application for mail ballots and satisf[ies] itself that both signatures are identical." R.I. Gen. Laws. § 17-20-26 (c)(2).[2]

Given the Nken standard, and given the deference accorded to a district court's exercise of its equitable discretion, Purcell v. Gonzalez, 549 U.S. 1, 5 (2006) (per curiam) (explaining that it is "necessary, as a procedural matter, for the Court of Appeals to give deference to the discretion of the District Court"), the foregoing would normally doom the Republicans' motion for a stay. The Supreme Court, however, has offered a special caution about the perils of federal courts changing the rules on the eve of an election. Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an

---

[2] The Republicans also argue that they will suffer irreparable harm without a stay because allowing the elections to move forward per the consent decree will effectively moot their challenge to it. Without passing on whether this alleged harm is an appropriate one to consider for the purposes of irreparable injury, see Providence Journal Co. v. F.B.I., 595 F.2d 889, 890 (1st Cir. 1979), we note that the appellees would face precisely the same harm if we were to grant the stay.

election." (citing Purcell, 549 U.S. at 4-5 ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."))). Given those admonishments we would be inclined to grant the stay requested -- especially as to the September primaries -- but for two unique factors in this case.

First, even in the wake of this much-publicized litigation, Rhode Island itself has voiced no concern at all that the consent judgment and decree will create any problems for the state or its voter. To the contrary, the elected constitutional officers charged with ensuring free and fair elections favor the consent judgment and decree and credibly explain how setting aside the consent judgment and decree would confuse voters. Nor has any other Rhode Island government entity sought to intervene or make its opinion known. This fact materially distinguishes this case from every other case the Republicans cite to illustrate the "Purcell principle." See Republican Nat'l Comm., 140 S. Ct. at 1205 (Wisconsin legislature joining with the Republican National Committee to challenge the district court's order); Purcell, 549 U.S. at 2 (State of Arizona and four counties seeking relief from a Ninth Circuit injunction); People First of Ala. v. Sec. of State for Ala., 2020 WL 3478093, at *1 (11th Cir. June 25, 2020) (State of Alabama and Alabama Secretary of State seeking stay of district court injunction), rev'd 2020 WL 3604049, at *1 (U.S. July 2, 2020)

- 9 -

(staying the district court's preliminary injunction pending appeal); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 248 (4th Cir. 2014) (ordering the district court to enter a preliminary injunction challenged by the State of North Carolina and members of its Board of Elections enjoining legislation setting forth new voting rules), stayed at 574 U.S. 927 (2014); Ohio State Conf. of N.A.A.C.P. v. Husted, 768 F.3d 524, 561 (6th Cir. 2014) (affirming district court injunction enjoining the Ohio Secretary of State from preventing individual counties from setting additional voting hours, challenged by Secretary of State and Ohio Attorney General), stayed at 573 U.S. 988 (2014); Perry v. Perez, 835 F. Supp. 2d 209 (W.D. Tex. 2011) (adopting an interim redistricting plan against the objections of the state of Texas), stayed at 565 U.S. 1090 (2011).

Second, Rhode Island just conducted an election without any attestation requirement, in which 150,000 mail-in ballots were requested. So the status quo (indeed the only experience) for most recent voters is that no witnesses are required. Instructions omitting the two-witness or notary requirement have been on the state's website since at least mid-July. See Rhode Island Department of State, Vote from Home with a Mail Ballot, https://vote.sos.ri.gov/Voter/VotebyMail. And to the extent certain voters expect the two-witness or notary requirement, we cannot imagine that it will pose any difficulty not to have to

- 10 -

comply with it. For this reason, the consent judgment and decree poses no conflict with the sort of expectations that concerned the court in Purcell and no substantial specter of confusion that might deter voters from voting. To the contrary, in the absence of the consent decree, it is likely that many voters will be surprised when they receive ballots, and far fewer will vote. Perhaps as a result, the Republicans make no claim that the decree will cause a decrease in election participation.

Because of the unusual -- indeed in several instances unique -- characteristics of this case, the Purcell concerns that would normally support a stay are largely inapplicable, and arguably militate against it. Moreover, our reliance on Rhode Island's passive reaction to the litigation precludes our holding from being relied upon to open any floodgates. To the contrary, as experience shows, states will be quick to defend election laws that they see as important and worth keeping, even when they might burden voting.

We have paid attention, too, to the possibility that this litigation is collusive, with defendants having agreed to judgment just days after the suit was filed. A state official unhappy with the lawful decisions of the state legislature should not be able to round up an agreeable plaintiff who then uses collusive litigation to "force" the state to do what the official wants. Here, though, all other representatives of Rhode Island's

government have gone silent, voicing no objection at all to the consent judgment and decree. Furthermore, if state officials fairly conclude, as credibly happened here, that enforcement of a law is unconstitutional in certain circumstances, one can hardly fault them for so acknowledging. Indeed, the Secretary of State and Board of Elections are obligated to enforce Rhode Island's voting laws, provided those laws are not deemed unconstitutional. R.I. const. art. III, § 3; R.I. const. art. IV, § 12. 17 R.I. Gen. Laws §§ 17-7-4, 17-7-5. Notice, too, was given to the attorney general, who by law is obligated to act as legal advisor for all state agencies and officers acting in their official capacity and to defend them against suit, R.I. Gen. Laws § 42-9-6, and who advised the defendants, herein, throughout the proceedings below. And it would be odd indeed to say that a plaintiff cannot get relief from an unconstitutional law merely because the state official charged with enforcing the law agrees that its application is unconstitutional. Finally, there is no claim that the details of the consent decree were not negotiated at arm's length. All in all, we see no collusion, and counsel for the Republicans expressly so agreed at argument.

Finally, as to the Republicans' status as intervenors in this case, the district court's order denying intervention is **reversed in part**, only for purposes of appeal, and the motion for stay pending appeal is **denied.**